IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Joe Hand Promotions, Inc. | : | |
| | : | Case No. 1:20-cv-897 |
| Plaintiff, | : | |
| | : | Judge Susan J. Dlott |
| v. | : | |
| | : | Order Granting Motion for Default Judgment |
| Victoria Pierson, *et al.* | : | |
| | : | |
| Defendants. | : | |

This matter is before the Court on Plaintiff's Motion for Default Judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure. (Doc. 9.) Plaintiff Joe Hand Promotions, Inc. ("JHP") asserts in this action that Defendants Victoria Pierson and The Chalet Bar, LLC unlawfully intercepted and broadcast a pay-per-view fight without purchasing the required sublicense from JHP. The Clerk of Court filed an Entry of Default against Defendants when they failed to appear or defend in this action. JHP now moves the Court to enter a default judgment against Defendants in the amount of $41,750. For the reasons that follow, the Court will **GRANT** the Motion, but it will issue a default judgment in the amount of $11,200.

**I.     PROCEDURAL HISTORY**

JHP initiated this action against Pierson and the commercial establishment of which she is the owner and operator, The Chalet Bar operating at 920 Race Street, Cincinnati, Ohio 45202, on November 6, 2020. (Doc. 1 at PageID 3.) It asserted claims for the unauthorized interception of cable communications in violation of 47 U.S.C. § 553, the unauthorized interception of satellite communications in violation of 47 U.S.C. § 605, and copyright infringement in violation of 17 U.S.C. §§ 106 and 501. (*Id.* at PageID 4–8.) Defendants were served with summonses on December 17, 2021, but they failed to plead or otherwise defend in this action. (Docs. 5, 6.)

Accordingly, the Clerk of Court filed an Entry of Default against them on February 22, 2021. (Doc. 8.)

JHP now moves for default judgment against Defendants pursuant to Federal Rule of Civil Procedure 55(b). JHP seeks $41,750 in damages under 47 U.S.C. § 605 only as follows:

- $10,000 in statutory damages,
- $30,000 in enhanced statutory damages,
- $1,350 in attorney fees, and
- $400 in costs.

(Doc. 9 at PageID 31.)[1]

**II.     STANDARD OF LAW FOR GRANTING DEFAULT JUDGMENT**

Rule 55(b) provides:

(b) Entering a Default Judgment.

(1) By the Clerk. If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.

(2) By the Court. In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to:

(A) conduct an accounting;

(B) determine the amount of damages;

---

[1] A plaintiff cannot recover damages under both § 553 and § 605 under facts like these. *See*, *e.g.*, *Joe Hand Promotions, Inc. v. Fazio*, No. 5:11 CV 1955, 2012 WL 1036134, at *3 (N.D. Ohio Mar. Jan. 31, 2012); *J & J Sports Prods., In. v. Fisher*, No. 1:12-cv-790, 2013 WL 4482405, at *4 (S.D. Ohio Aug. 20, 2013).

  (C) establish the truth of any allegation by evidence; or

  (D) investigate any other matter.

Fed. R. Civ. P. 55

  "[A]fter entry of default, the decision to grant a default judgment is within the Court's discretion." *AF Holdings LLC v. Bossard*, 976 F. Supp. 2d 927, 929 (W.D. Mich. 2013). An entry of default "conclusively establishes every factual predicate of a claim for relief." *Thomas v. Miller*, 489 F.3d 293, 299 (6th Cir. 2007). That is, the well-pleaded allegations of fact establishing liability are taken as true following an entry of default. *See Hawkins v. Franklin Cnty. Sheriff's Off.*, No. 2:13-CV-186, 2015 WL 1647033, at *2 (S.D. Ohio Apr. 14, 2015); *Williams v. Rudin*, No. 1:11-CV-Ol 103, 2012 WL 3562134, at *1 (W.D. Tenn. July 31, 2012), *report and recommendation adopted*, 2012 WL 3562106 (W.D. Tenn. Aug. 16, 2012). However, allegations regarding the amount of damages must be proven with evidence through detailed affidavits, documentary evidence, or at an evidentiary hearing. *Proampac Holdings, Inc. v. First Source, LLC*, No. 1:20-cv-417, 2021 WL 2334288, at *1 (S.D. Ohio June 8, 2021); *see also Vesligaj v. Peterson*, 331 F. App'x 351, 354 (6th Cir. 2009) (stating that an evidentiary hearing is allowed, but not required, by Rule 55(b)(2)). "An evidentiary hearing is not required if the Court can determine the amount of damages by computation from the record before it." *Truex v. Drivers Direct, LLC*, No. 1:21-CV-01343, — F. Supp. 3d. —, 2022 WL 336346, at *1 (N.D. Ohio Feb. 4, 2022).

**III.**   **FACTS AND ANALYSIS**

**A.**   **Liability**

  JHP seeks default judgment against Defendants for a violation of 47 U.S.C. § 605(a).[2]

---

[2] The statute prohibits the following acts:

The statute provides a private right of action to persons aggrieved by violations of § 605(a). 47 U.S.C. § 605(e)(3)(A). "In order for Plaintiff to establish a violation of § 605(a), it must show that (1) Defendants intercepted the transmission of the [Program]; (2) Defendants did not pay for the right to receive the transmission; and (3) Defendants displayed the [Program] to the patrons of their commercial establishment." *Joe Hand Promotions, Inc. v. Truong*, No. 3:19-CV-00701, 2020 WL 7014303, at *3 (M.D. Tenn. May 20, 2020) (citation omitted). For individual liability to attach, the plaintiff must establish that the individual had the right and ability to direct the misconduct, as well as a direct financial interest in the misconduct. *Joe Hand Promotions, Inc. v. Pat's Snack Bar, LLC*, No. 6:19-CV-67, 2020 WL 1923178, *3 (E.D. Ky. Apr. 21, 2020); *J & J Sports Prods., Inc. v. The Green Plantain, Ltd.*, No. 1:12-cv-337, 2013 WL 3322061, at *4 (S.D. Ohio July 1, 2013). A "general statement of ownership" is not sufficient to establish individual liability. *J & J Sports Prods., Inc. v. Fisher*, No. 1:12-cv-790, 2013 WL 4482405, at *3 (S.D. Ohio Aug. 20, 2013). For example, a plaintiff could allege and prove that the owner

---

Except as authorized by chapter 119, Title 18, no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney, (2) to a person employed or authorized to forward such communication to its destination, (3) to proper accounting or distributing officers of the various communicating centers over which the communication may be passed, (4) to the master of a ship under whom he is serving, (5) in response to a subpoena issued by a court of competent jurisdiction, or (6) on demand of other lawful authority. No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. This section shall not apply to the receiving, divulging, publishing, or utilizing the contents of any radio communication which is transmitted by any station for the use of the general public, which relates to ships, aircraft, vehicles, or persons in distress, or which is transmitted by an amateur radio station operator or by a citizens band radio operator.

47 U.S.C. § 605(a).

was present on the night of the misconduct or that the owner supervised or authorized the misconduct. *Id.*

JHP has established liability here by the facts alleged in the Complaint and the additional evidence filed in support of the Motion for Default Judgment. JHP purchased the right to commercially distribute the broadcast rights to the Deontay Wilder v. Tyson Fury fight program ("the Program") that was broadcast on Saturday, December 1, 2018. (Doc. 1 at PageID 4; Doc. 9-3 at PageID 49.) The Program consisted of the main fight plus undercard fights. (Doc. 9-3 at PageID 50.) JHP sold sublicense rights to broadcast the Program to commercial establishments such as casinos, bars, restaurants, and nightclubs. (Doc. 1 at PageID 4–5; Doc. 9-3 at PageID 49–50.) The sublicense fee was based on the fire-code occupancy limits for the establishment. (Doc. 9-3 at PageID 50, 54.) For the Program, the sublicense fee was $1,450 for establishments with occupancy limits of 1–100 patrons and $2,700 for establishments with occupancy limits of 101–200 patrons. (*Id.* at PageID 54.) The Chalet Bar did not lawfully purchase a sublicense from JHP to broadcast the Program. (Doc. 1 at PageID 5; Doc. 9-3 at PageID 50.)

Joe Hand, the president of JHP, averred that pay-per-view broadcasts such as the Program cannot be mistakenly or accidently intercepted, but rather can be intercepted only through deliberate means such as the use of descrambling devices, the use of an illegal cable drop or splice, or misrepresenting a commercial establishment as a residential property for which a reduced-fee sublicense was purchased. (Doc. 9-3 at PageID 50–51.) JHP paid auditors and law enforcement personnel to detect and identify "signal pirates" who broadcast the Program without paying the sublicense fee. (*Id.* at PageID 50.) JHP explained the losses caused by signal pirates as follows:

> [T]he unchecked activity of signal piracy not only has resulted in our company's loss of several millions of dollars of revenue, but also has a detrimental effect

5

> upon lawful residential and commercial customers of cable and satellite broadcasting whose costs of service are increased significantly by these illegal activities, including the depravation of tax revenue to the communities where our potential customers reside, and the denial of benefits such tax revenue would provide the residents of such communities.

(*Id.* at PageID 51.)

Jonathan Askew was one of the investigators retained by JHP to identify commercial establishments that pirated the Program without paying a sublicensing fee. He saw the Program being broadcast on three flat screen televisions (approximately 55–60 inches diagonal) and one larger projection screen at The Chalet Bar. (Doc. 9-4 at PageID 55.) The Chalet Bar charged a $5.00 cover to enter the establishment. (*Id.*) The Chalet Bar had chairs set up theater-style for patrons to watch the Program. (*Id.* at PageID 55–56.) He estimated the capacity of the establishment to be 125–135 patrons. (*Id.* at PageID 56.) When he counted the number of people in the establishments three times, he came up with head counts of 55 people, 53 people, and 48 people. (*Id.* at PageID 56.) The affidavits of Hand and Askew are sufficient to establish that Defendants did not have a sublicense to broadcast the Program, that they pirated the signal for the Program, and that they broadcast the signal to patrons at The Chalet Bar unlawfully. Liability is established under § 605(a) against The Chalet Bar. *See Truong*, 2020 WL 7014303, at *3 (listing three elements of the claim).

As to individual liability, JHP has not alleged or established that Pierson was at The Chalet Bar on the night of the Program. However, it has alleged more than simply that she was the owner and operator of The Chalet Bar. It alleged that upon information and belief that she "had the right and ability to supervise the activities of those employees of The Chalet Bar," that she was the person identified as "Member" on The Chalet Bar's liquor license, and that she "specifically directed the employees of The Chalet Bar to unlawfully intercept and broadcast" the Program or that the actions of the employees are imputable to her. (Doc. 1 at PageID 3–4.)

6

It further alleged that she "had an obvious and direct financial interest in the activities of The Chalet Bar's operation" and that the "unlawful broadcast . . . resulted in increased profits." (*Id.* at PageID 4.) If Defendants had defended this lawsuit, then the Court might have required JHP to support these broad allegations with more specific facts. But Defendants defaulted, and JHP was unable to secure discovery from them. The Court finds that the allegations are sufficient to establish personal liability against Pierson in the context of this case.

**B.     Damages**

The issue, therefore, becomes the proper amount of damages to award JHP. An aggrieved plaintiff may elect to recover either actual damages or statutory damages "in a sum of not less than $1,000 or more than $10,000." 47 U.S.C. § 605(e)(3)(C)(i). In addition, if the defendant acted "willfully and for purposes of direct or indirect commercial advantage or private financial gain," a district court also can award increase the award of damages "by an amount of not more than $100,000." 47 U.S.C. § 605(e)(3)(C)(ii). These damages are commonly referred to as enhanced damages. Finally, a prevailing plaintiff can recover attorney fees and costs. 47 U.S.C. § 605(e)(3)(B)(iii). Here, JHP seeks $10,000 in statutory damages, $30,000 in enhanced damages for a willful violation, and $1,750 in attorney fees and costs.

**1.     Statutory Damages**

The Court begins with the appropriate statutory damages award. JHP cites primarily to authorities in other jurisdictions to support his argument that the Court should award statutory damages in the maximum amount of $10,000. This Court, however, is bound by Sixth Circuit precedent and persuaded by the decisions of other district courts within the Sixth Circuit. District courts have discretion to determine a "just" award within the statutory guidelines. *National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 918 (6th Cir. 2001) (citing §

605(e)(3)(C)(i)(II)). Courts in Sixth Circuit often use the economic loss suffered by the plaintiff as the baseline for the statutory damages award. In *Eliadis*, the Sixth Circuit upheld as "not clearly erroneous" a statutory damages award of $4,500 that was based on the almost $1,000 sublicensing fee for broadcast rights plus investigative and administrative costs of approximately $3,500 incurred to determine the source of the § 605(a) violation. *Id*. The Sixth Circuit did not state that the appropriate statutory award had to be limited to the plaintiff's economic loss. Nonetheless, some decisions in this Circuit limit statutory damages in this way. *See*, *e.g.*, *Joe Hand Promotions, Inc. v. Turner*, No. 3:19-CV-012, 2021 WL 1383267, at *5 (S.D. Ohio Apr. 13, 2021) (awarding the $8,200 licensing fee as the statutory damages); *Joe Hand Promotions, Inc. v. Willis*, No. 5:08 CV 2786, 2009 WL 369511, *2 (N.D. Ohio Feb. 11, 2009) (awarding the minimum statutory damages allowed of $1000 after determining that the defendant's fee to broadcast the fight would have been $875).

Other courts have calculated the statutory damages award more broadly. Courts examine "other facts to determine the appropriate damages award, including the number of patrons at the time of the violation, the seating capacity of the establishment, the rate charged by the plaintiff for the broadcast, whether the defendant charged a cover to patrons or was likely to have obtained significant profits in another manner." *Truong*, 2020 WL 7014303, at *4 (internal quotation and citation omitted). Courts also look to remedy other losses suffered by the plaintiff. For example, one district court calculated the appropriate statutory award by tripling the amount of the licensing fee. *Pat's Snack Bar*, 2020 WL 1923178, at *5. The court's goal was to compensate the plaintiff also for "goodwill lost as a result of authorized establishments' unfair competition from [d]efendants' unauthorized interception." *Id*. Another court awarded $2,000 in statutory fees where the licensing fee would have been only $1,450 to remedy the harm to

8

plaintiff's reputation and goodwill. *Joe Hand Promotions, Inc. v. Krazy Chicken Int'l LLC*, No. 3:22-CV-59, 2022 WL 3022539, at *3 (E.D. Tenn. July 29, 2022). A district court in Kentucky tacked on $1,000 to the licensing fee base calculation to account for profits the defendants made from the cover charge and the sale of food and drinks. *Joe Hand Promotions, Inc. v. Young*, No. 5:09-CV-157, 2010 WL 3341449, at *3 (W.D. Ky. Aug. 24, 2010). A district court in Michigan started with the lost licensing fee and then tacked on an award of $50 times the estimated number of patrons in the establishment ($50 x 63 patrons) to calculate the statutory damages. *J & J Sports Prods., Inc. v. Club Le'Elegant Corp.*, No. 14-12233, 2015 WL 13050011, at *2 (E.D. Mich. Mar. 31, 2015). Finally, Judge Sandra Beckwith in this District Court awarded JHP the $10,000 in statutory damages it requested in another case, even though there were less than twenty patrons in the violating bar that held approximately 250 patrons, to deter "conduct that is apparently quite common yet quite difficult for Plaintiff to detect and document." *Joe Hand Promotions, Inc. v. Jon Musser*, No. 1:15-cv-272, Doc. 11 at PageID 66–67 (S.D. Ohio Sept. 15, 2015).

In this case, JHP's economic losses start with the $2,700 sublicensing fee that The Chalet Bar, an establishment with an occupancy limit between 101–200 patrons, did not pay. This amount, however, does not adequately remedy JHP for the cost of the investigator employed to identify signal pirates—a cost not specified in the evidence submitted—or the harm to its reputation and goodwill. It also does not account for the $5.00 per patron cover fee charged by The Chalet Bar. Additionally, the Court is persuaded by JHP's argument that a statutory damages award limited to amount of the sublicensing fee only does not discourage commercial establishments from signal piracy because there is no penalty for getting caught other than paying that already was owed. For these reasons, the Court will double the sublicensing fee and

9

award JHP $5,400 in statutory damages.

  **2. Enhanced Damages**

  Next, the Court addresses JHP's request for enhanced damages in the amount of $30,000. Enhanced damages are awarded when the violation of § 605(a) is "willful[] and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). For the reasons that follow, the Court agrees that enhanced damages are appropriate, but an award in the amount of $30,000 is grossly excessive.

  In 2013, this Court declined to award enhanced damages against a defendant against whom default judgment was granted in a §§ 553 and 605 case. *Fisher*, 2013 WL 4482405, at *4. The Court relied on the facts that the establishment did not charge a cover, did not raise food or drink prices, did not advertise the event, and was not filled to capacity. *Id.* However, the Court now is persuaded by recent case law and JHP's argument that these factors are not dispositive on the issue of whether the violation was willful. A signal pirate has a competitive advantage over an establishment that paid a sublicense to broadcast a pay-per-view program, and it has no need to recoup a cost of the sublicense through a cover charge or higher food and drink prices. (Doc. 9-3 at PageID 52–53.) As Judge Beckwith stated in awarding enhanced damages, whether or not the establishment "actually reaped a commercial or financial advantage is not controlling" because "it is difficult to imagine any other motive for such conduct." *Musser*, No. 1:15-cv-272, Doc. 11 at PageID 65. However, the presence or absence of these profit-related factors can be relevant to the amount of enhanced damages to be awarded. *See Joe Hand Promotions, Inc. v. Fazio*, No. 5:11 CV 1955, 2012 WL 1036134, at *4 (N.D. Ohio Mar. Jan. 31, 2012) (awarding lower amount of enhanced damages than sought by the plaintiff because the defendant had not charged a cover, increased its prices, or advertised the fight), *report and recommendation*

*adopted by*, 2012 WL 1035886, at *1 (N.D. Ohio Mar. 27, 2012).

District courts within the Sixth Circuit have enhanced the damages by doubling or tripling the statutory damages award for willful violations. *See*, *e.g.*, *Krazy Chicken, Int'l*, 2022 WL 3022539, *5 (awarding enhanced damages two-and-one-half times the statutory damages); *Truong*, 2020 WL 7014303, at *6 (awarding enhanced damages double the statutory damages); *Club Le'Elegant Corp.*, 2015 WL 13050011, at *2 (awarding total damages triple the statutory damages); *Fazio*, 2012 WL 1035886, at *1 (awarding enhanced damages double the statutory damages).

In this case, the Court has no difficulty concluding the violation was willful and for the purpose of obtaining a commercial advantage or financial gain. As Joe Hand explained in his Affidavit, intercepting and broadcasting the Program cannot be done inadvertently. (Doc. 9-3 at PageIID 49-50.) Other courts have so found. "Because intercepting and unscrambling a television signal requires an overt act, 'it is inconceivable that [Defendants] could have inadvertently decoded the scrambled signal or accidentally altered cable services to result in the unauthorized broadcast." *Truong*, 2020 WL 7014303, at *6 (quoting *Pat's Snack Bar*, 2020 WL 1923178, at 5). Other evidence of willfulness includes that The Chalet Bar charged a $5.00 cover, broadcast the Program on all four screens in the establishment, and lined-up chairs theater style to face the projection screen above the raised stage area. (Doc. 9-4 at PageID 55–56.)

The Court will award enhanced damages in the amount of $4,050, or 1.5x the amount of statutory damages. This enhanced damages award is appropriate here where the violation was willful, but not egregious. Defendants will be required to pay $9,450 in damages under § 605(e)(3)(C)(i) & (ii), an amount reasonably calculated to compensate JHP for its losses, punish Defendants for unlawful conduct, and deter future signal pirating.

11

### 3. Attorney Fees and Costs

Finally, JHP seeks $1,750 in attorney fees and costs pursuant to 47 U.S.C. § 605(e)(3)(B)(iii). JHP's counsel has averred that he has spent 4.5 hours of time at a cost of $300 per hour for a total of $1,350 in attorney fees. (Doc. 9-1 at PageID 32.) He also avers that court costs amount to $400. The Court will award $1,750 in attorney fees and costs.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Motion for Default Judgment (Doc. 9). Judgment is awarded in favor of Joe Hand Promotions and against Pierson and The Chalet Bar in the amount of $11,200.

**IT IS SO ORDERED.**

BY THE COURT:

S/Susan J. Dlott
Susan J. Dlott
United States District Judge